[No 2365.  Decided November 30, 1896.]

JOHN L. KAHALEY, *Respondent*, v. JOHN HALEY, *Respondent*, EDWARD O. GRAVES, *Appellant*.

BAILEE — LIABILITY FOR CONVERSION — WHAT CONSTITUTES CONVERSION OF STOCK — EVIDENCE.

Where the bailor of a certificate of shares of stock agrees with a purchaser that a portion of the shares shall be transferred to him in consideration of a certain price, a portion of which is paid down, and the bailee in whose hand the certificate is held, consents thereto and agrees to hold the stock for the purchaser and to deliver the same to him, first procuring the cancellation of the original certificate and the issuance of another one to the purchaser upon his paying the balance of the purchase price, such transaction amounts to a sale, and passes such a title to the purchaser as to authorize an action on his part to recover for the conversion of the stock.

The surrender of a certificate of stock to one not entitled to it,

who procures its cancellation and the issuance of a new certificate to himself, amounts to a conversion of the stock.

In an action to recover for the conversion of shares of stock by a bailee instituted by one who had purchased a portion of the shares, on account of the bailee's having surrendered all the shares to a third party assuming to be a purchaser of the whole of them, evidence tending to show that such third party paid the bailee in full for all the stock is immaterial.

Appeal from Superior Court, King County.—Hon. Richard Osborn, Judge. Affirmed.

*Bausman, Kelleher & Emory,* for appellant.

*Stratton, Lewis & Gilman,* and *Thomas A. Gamble,* for respondent.

The opinion of the court was delivered by

Scott, J.—This action was brought to recover the value of ten shares of stock in the Haley Grocery Company, which it was claimed the defendant Graves had wrongfully delivered to one Hill. Said stock had been deposited with Graves as bailee under the following agreement:

"Seattle, Washington, January 30, 1892.
E. O. Graves, Esq., Seattle, Wash.
*Dear Sir:* We deposit herewith the following papers.

1st. The two notes of Joseph B. Hill for $2,515.35 each, one dated on or before one year after date; the other on or before two years after date.

2nd. Two notes of John Haley, exactly similar to the preceding.

3rd. Forty-five shares of the capital stock of the Haley Grocery Company, originally issued to James H. Glenn, and by him endorsed to Joseph B. Hill.

4th. Forty-five similar shares endorsed by J. H. Glenn to John Haley.

The papers are left with you with the following mu-

tual agreement and understanding: Messrs. Hill and Haley have purchased each the shares mentioned respectively, and have paid J. H. Glenn, by their respective notes. The shares are not to be delivered up to the purchasers until the notes are paid, nor are the notes to be removed or negotiated by the payee during the period which they run. On the payment of these notes, which can be done at any time before or after maturity, you will please deliver to the purchasers, respectively, their shares, and each of the purchasers shall have a right to a separate release on the payment of his individual notes.

(Signed)      J. H. GLENN,
              JOSEPH B. HILL,
              JOHN HALEY.

Witness:
FRED BAUSMAN.

I assent to hold the aforesaid papers on the above terms.        (Signed)      E. O. GRAVES."

The shares in question were included in the certificate for the forty-five shares indorsed by Glenn to Haley. Haley negotiated a sale of the ten shares to the plaintiff Kahaley, and on February 2, 1892, Haley, Graves and Kahaley met at Graves' office, Graves being present, and stated the terms of the sale to him, whereupon Kahaley paid to Graves $1,000, which was indorsed upon the notes given by Haley to Glenn, which were held by Graves, and for which the stock was pledged as security. The amount paid did not represent the whole purchase price. The plaintiff contends that the balance remaining unpaid was only the sum of thirty dollars, while Graves contends that it was something more than that, but as the jury found for the plaintiff, it must be considered that this question of fact was determined in the plaintiff's favor.

It is conceded that the balance was not to be paid

until the certificate for the forty-five shares had been surrendered, and two new certificates taken, one for the ten shares to Kahaley, whereupon it was to be turned over to Kahaley upon his paying the balance of the price remaining unpaid.

It is conceded that nothing further was done by any of the parties until late in the month of October, when Haley gave Hill an order upon Graves in the following language:

" You are hereby authorized to deliver to Joseph B. Hill all shares of stock of Haley Grocery Company in my name and deposited with you as collateral for the payment of my note or notes to J. H. Glenn, upon the payment by said Hill of whatever may be due said Glenn upon said notes, or when for any other reason said stock may be released as collateral.

JOHN HALEY."

Graves accepted this order in writing, but did not then deliver to Hill the certificate of the shares. On November 15th Kahaley tendered to Graves the balance of thirty dollars and demanded the ten shares of stock sold him as aforesaid, which Graves refused to deliver to him, and thereafter delivered to Hill. Hill caused the certificate to be canceled and a new one issued to him for the whole forty-five shares, whereupon the plaintiff brought this action and obtained a judgment in his favor against Graves, and Graves has appealed.

It is conceded that Graves was only a gratuitous bailee, and it is not claimed that there was any fraud upon his part in said matter, but only that he delivered the certificate aforesaid to Hill under a mistaken idea of his duty.

The first errors alleged are based upon the refusal of the court to grant a non-suit, and to peremptorily instruct the jury to find a verdict in favor of appellant

on the ground of insufficiency of the evidence. It is
based upon two propositions. One was that the plain-
tiff had no such ownership in the shares of stock in
question as would entitle him to maintain the action,
and the second was that there had been no conversion
of the stock. We are of the opinion that the facts
testified to show a sale of the stock from Haley to Ka-
haley, that Graves consented thereto, agreed to hold
the stock for Kahaley thereafter, and to deliver the
same to him, first procuring the cancellation of the
original certificate and the issuance of another one
for the ten shares to Kahaley upon his paying the bal-
ance of the purchase price. *Beardsley v. Beardsley*, 138
U. S. 262 (11 Sup. Ct. 318).

Graves' contention is that he was bound to deliver
the stock to Hill by the acceptance of the written or-
der prior to the tender of the balance by Kahaley, and
that at the time he accepted said order he had forgot-
ten about the agreement relating to the sale of the ten
shares to Kahaley. Kahaley, as well as Graves, seems
to have been somewhat negligent in the matter in al-
lowing it to run for so long a time after the agree-
ment aforesaid was entered into, and had Graves de-
livered the certificate for the shares to Hill prior to
the tender of the balance due to him by Kahaley
there might be ground for holding that Kahaley was
not entitled to recover of Graves for the shares pur-
chased by him. But it will be observed that the order
given subsequently by Haley to Hill, which Graves
accepted, did not mention any particular number of
shares, but directed him to deliver all shares of stock
of the Haley Grocery Company in Haley's name, then
deposited with Graves as collateral as aforesaid. At
the time this order was given it does not appear that
Haley knew that Graves still held the ten shares which

had been negotiated to Kahaley, if that were material.
We think the fair purport of that order authorized the
delivery of only thirty-five of the shares indorsed by
Glenn to Haley, and that Graves' acceptance of that
order bound him to deliver only that number of
shares.

There is some contention that, at the time Hill pre-
sented this order and Graves accepted it, Hill paid to
Graves the value of the whole forty-five shares, but be
this as it may, if such payment was made upon a mis-
understanding of the amount of shares then held by
Graves for Haley, steps could have been taken, if
necessary, to have the excess returned to Hill by
Graves when he was reminded of the true state of af-
fairs, and he received such notice at the time of the
tender to him by Kahaley of the balance of the pur-
chase price remaining unpaid, and he had the stock
in his possession at that time. In any event, Kaha-
ley was not concerned with the amount paid by Hill
to Haley, or to Graves for him, for the stock.

The surrender of the certificate for the stock by
Graves to Hill and the cancellation of it and the issu-
ance of a new certificate to Hill, amounted, under the
authorities, to a conversion of the stock, and there was
no error in the matters stated. 1 Cook, Stock and
Stockholders, § 576.

It is next contended that the court erred in allowing
Haley and Kahaley to testify to their understanding
as to whether the transactions had between them and
Glenn in the presence of Graves as aforesaid, amounted
to a sale of the stock, but we fail to see anything ma-
terial in this. Both parties had testified directly that
the stock was sold, and their further testimony, that
they intended the one to sell it and the other to pur-
chase it, could add nothing to this.

It is next contended that the court erred in sustaining an objection to a question by appellant to Hill asking him how he paid for the stock in question. We think that this was immaterial.

The next errors complained of are in relation to the instructions, which were requested by the appellant and which the court refused to give, but these were all based upon the appellant's contention of the insufficiency of the evidence to support a sale of the stock by Haley to Kahaley, and a conversion of it thereafter, and have been disposed of in what has previously been said.

The case seems to have been properly submitted to the jury, and the verdict and judgment in favor of the plaintiff is affirmed.

DUNBAR, ANDERS and GORDON, JJ., concur.

HOYT, C. J., dissents.